Please be seated. Thank you. Please call the next case. 112-2893 William Archer v. Burroughs Court. Counsel, you may proceed. Thank you, Your Honor. Good morning, Your Honors. Counsel, may it please the Court. Your Honor, my name is James Hammond, and I represent the plaintiff appellant in this case, William Archer. This is a manifest weight case, Your Honors. Your Honors, this is a vocational rehabilitation case. Whether the petitioner, the plaintiff in this case, is entitled to vocational rehabilitation, I don't believe is at issue. If we look at the National Tea case, I think it's fairly clear and established that the plaintiff in this case was clearly entitled to vocational rehabilitation. No, there's no question he may have been entitled to some form of vocational rehabilitation, but not the one he chose. Well, that's the issue, Judge. Your Expert, it's absolutely astounding to me that Ms. Entenberg could make the opinion, render the opinion that she did, when she was totally unaware of national studies that nursing is one of the highest, one of the occupations that contributes the highest to back injuries. Judge, I believe that those studies are primarily dealing with nurses for the most part. I mean, I've had some involvement with this with CNAs and lower end nursing positions, even candy striper type positions, where those people come in. Nurses aren't candy stripers. And I understand that, Judge, and that's actually my position. My position is that, and unfortunately, some of us, as they had occasion to deal with the nurses, our ends and the top nurses in the positions, they're not the people that come in and do the lifting and do the clean up and do the – they're the people that, and a lot of them are in positions where they're sitting at desks most of the day. And, you know, my client is going through a position for a surgical, a certified surgical technician. But there is evidence in the record from Morrison that he's not suitable for that occupation, is there not? Judge, what he says is that he's a minimum – he's at a minimum physical demand level based upon the functional capacity evaluation. And he says that that means that he couldn't be a nurse because that's a medium physical demand position. Well, Judge, very important that his classification is not a mechanic. A jiffy-moog mechanic is somewhere. If you take a look at that, my client, it was a master mechanic. He dealt with hundreds of pounds of weight on a regular basis. When he went back to work after he had his accident, trying to get back into what he was doing, a couple of the first jobs that they put him on were changing engines. And you were talking about hundreds of pounds of weight here that this man is dealing with on a regular basis. If you look at the – in the dictionary of occupational titles, it shows mechanics, and it shows master mechanic positions. And if you look at the master mechanic positions, there are just countless things that they're responsible for. And the other thing that I want to make sure – That's not terribly relevant. What is relevant is what the FCE indicated. The FCE indicated that he could work at a minimum demand level or medium demand level and limited his lifting while bending in – while he's working. And Morrison – yeah, I believe that's his name – he said that he can't do that as a nurse. He could not work to what those restrictions were as a nurse because they're required to do lifting. And Annenberg was just absolutely incredible to me. She admits that she didn't administer any tests, did not review any of his high school grades, didn't perform any analysis of his transferable skills, and denied that nurses are often required to lift patients weighing more than 50 pounds. And unless you're a pediatric nurse, why would you be lifting someone who's less than 50 pounds? Judge, the nurses don't lift patients. I've been there. Judges, nurses who are certified nurses assistants – I mean, there's nurses aides. There may be even practical nurses that will do that work, that will come in. But they won't lift somebody who is a 200-pound, 250-pound man. They have these Hoyer lifts that they bring in, and I have some familiarity with those. Bring those in, and they put the patient in those, and they lift those up. And they would have – they would be having back injuries left and right if they didn't use those lifts. Actually, I'm only concerned about what's in the record. She denies knowledge of a 2000 report by the Bureau of Labor Statistics, which listed nursing in the top ten professions at risk for back injuries, and denies knowledge of a 2000 Veterans Health Administration report, which indicates nurses were injured six times more frequently than any other occupational group. Now, it's the commission's job to determine whether the requested vocational rehabilitation is suitable for the injured employee. And that's a question of fact. And so it's a manifest weight argument. Now, you've got Morrison's opinion, you've got Edinburgh's opinion, and as near as I can figure out, she saw nobody, studied nothing, and read nothing, and came up with an opinion. And the commission says, we buy Morrison. So tell me why that's against the manifest weight argument. Judge, I believe that that's incorrect, because I think she spoke to the people at the school where the nursing program took place. There's evidence in there. There was evidence in her deposition and attached to her deposition as to the contacts that she had with the school. I think she stated that she did check the dictionary of occupational titles. She reviewed the possibilities for him to get into a position of employment in the nursing. How can she do that if she doesn't even review his high school grades or doesn't perform an analysis of his transferable skills? Judge, a lot was said about this man's high school grades. His high school grades were from 20-some years ago, Judge. If I were judged on my – I'm not suggesting to you that there's one right answer in this case. What I'm suggesting to you is that there is evidence on one side and there's evidence on the other side, and somebody's got to decide which one they're going to believe. Now, is Morrison's opinion, do you think – I mean, it doesn't rest upon consultation to the entrails of chickens, does it? Judge, if you looked at the deposition transcript of Mr. Morrison, he didn't know how old the petitioner was, the plaintiff was, Judge. He didn't know what his jab entailed. He didn't know – there were just all kinds of things. He didn't have the medical records. He didn't know what the nature of his injury was. He didn't know what his surgery was. He didn't know what his restrictions were. The medical records he got, he got from me. I mean, he said that in his deposition testimony, Judge. His opinion says that he knew what his work restrictions and his work history was and that he determined that the approach to be a vocational alternative for the claimant included light or sedentary positions in the automotive industry. Are you saying that that's what it says in his deposition transcript? This is what his report says. Did he deny that he did this? If you looked in the deposition transcript, I mean, it says one thing after another that he didn't know about the petitioner. There were a lot of things that he didn't have, and I – Judge, I'm kind of amazed that Susan Entenberg, who's been before the Commission on many, many occasions, has been before this Court, I believe, on occasion, and has testified and has been accepted as an expert in vocational rehabilitation. Counsel, there's no question. She testifies very well for petitioners, and Mr. Morrison testifies very well for respondents. So, I mean, we know what we're dealing with, but what I'm suggesting to you is somebody's got to make a decision who to believe, and why are we the group that does that? Because I think if you look at all of the facts, if you look at all of the evidence that's in here, and as I said, I believe that Ms. Entenberg did a lot more than what you're giving her credit for right now. I think there's a lot more in there. I think she did a lot more study. And I wanted to point out also that Mr. Archer didn't do this blindly, didn't do it on his own. He sought counseling from his neighbors that were involved with the school. He didn't know what he was going to do to replace his employment. And this is a man that made $100,000 a year, and they were telling him to take a job for $30,000 or $35,000. Well, what would he be entitled to benefits, though? Your Honor, I know that one of the National TK says, one of the things that the National TK says is, are we supposed to put all petitioners and plaintiffs that get hurt back to their pre-injury status? And I think one of the things that the National TK said, well, that can't be a hard and fast rule. We can't be required to put everybody back in exactly the position they were at before they were injured. But what it does say – But not the economic position. Correct, Judge. But what that case does say is that it says we have to look at the circumstances of every case. And what I'm saying to this Court is please look at the circumstances of this case, because we have a man here who's losing $100,000 a year. Isn't he potentially entitled to a wage differential, though? Yes, Judge. I mean, that's part of my argument. Wait a minute. Hold on. This was a 19B. He can't get a wage differential on a 19B. He can get maintenance benefits. I said potentially. Potentially. We're talking about restoring him to his economic position he had before the injury, which is what the Act is about. Correct, Judge. What the Act says is that we've got to do our best to try to put him as close to that position as possible. If you put him in a service writer position – I mean, it would be easy for him to have just said, okay, fine, I'll go to work as a service writer, and I'll get my wage differential, and what the heck. We'll see what happens. This guy's got some drive and some ambition, and he's losing $100,000 a year of job. He wants to do the best that he can to get back to something like that. Well, no, but the point is this was a 19B. And Justice Stewart is correct. Sooner or later, you shouldn't have argued he was entitled to a wage differential here because this commission couldn't award him a wage differential, not on a 19B. That's permanent benefits. So when this goes back, if it goes back to the commission, he's going to get the opportunity to argue wage differential, and then he's going to be made whole. I mean, he's going to do exactly what the Act requires. I presume whatever job he has, he's going to say this is what I used to earn, this is what happened to me, this is what I'm capable of earning, and I'm entitled to the difference. And I'm sure the commission's going to award it. And in the long run, it might have been cheaper for the employer to pay for him to go to nursing school. Yeah. But, you know. And I understand what you're saying, and I understand that we have to go through this process. What I'm trying to argue for Mr. Archer and for other plaintiffs who are in this position is that what the employer in this case is forcing Mr. Archer, forced Mr. Archer, to accept a service writer position and take a significant loss in the pay that he was earning and not proceed to go through the schooling program, go through the nursing program, which, Judge, is going to make him whole. If he didn't go through the nursing program, if he didn't get where he's gotten, he wouldn't be made whole. I mean, if he did nothing over this four-year period of time, he wouldn't be made whole. I mean, if you're going back to the commission now and the commission said, you know, okay, we'll pay you the wage differential, that's not going to make him whole. That's not going to put him back to where he was, even close to where he was before his accident, Judge. What's it going to put him in? It's not going to get him in a position of he's not going to be in the nursing program. He's not going to be a nurse. He wasn't a nurse before he got injured. No, he wasn't, Judge, but he was earning $100,000 a year. How much is he going to earn with the wage differential if he is able to secure a master mechanic as a service writer would probably be a good fine for an automobile dealer. Sir, Judge, the other thing I want to make sure that we understand is that he went back to work as a service writer. Right. You're saying, like, me, I get injured and the only job that I can go back to doing is as a law clerk. Talk about totally changing someone's life. This is an economic statute. Okay, Judge. What I'm saying is it is an economic statute. It says we're just economic beings. Whether we're artists or not, our value is only as an economic being. And I understand the overall idea, Judge. But what I'm saying is if he does something that's paying him $30,000, $35,000 a year, the wage differential today is over $100,000. That's $70,000, $80,000. That's not going to get made up by a wage differential. That's going to be my next question. The record shows he was making $90-some-thousand at the time. And he made $100,000 at the time. And the year before, he made $105,000. Okay, so let's say $90,000 to $100,000. And that was five years ago. Yes. What is the max and the wage differential? But you're saying there's got to be. The max and the wage differential is the state average weekly wage, I believe, is the max. Right. Okay. You can't take what he's earning plus a wage differential. Equalize what he would make in his former position. He's still going to be losing, and as you say, from an economic standpoint, obviously they're not making him whole as to the other issues. But he's still going to be out $25,000, $30,000, $35,000 if he doesn't go to work in a career. That's not what this case is about. This case is about whether the finding of the commission that his chosen vocational rehabilitation was not suitable for him. And that's all this case is about. They didn't totally deny him vocational rehabilitation. They denied him the vocational rehabilitation he wanted, which was nursing. They said it wasn't suitable. Whether it is or is not suitable is a fact question. Morrison said it wasn't. Entenberg said it was. The commission went along with Morrison. He gave reasons. Judge, I know he gave reasons. Ms. Entenberg gave reasons. The counselors at the school program, they accepted him into their program. They tested him. There was a reason why they did that. And, Judge, I'm saying that this is a manifest way to the evidence case. Okay. And I understand what you're focusing on is that maybe they should have accepted Morrison's. I'm saying my argument is they shouldn't have accepted Morrison's position. If you look at all. . . You'll have time to reply. Your time is up. I'm sorry, Judge. Thank you. Thank you. Counsel, can we make. . . Mark Russell, I'm the guy who wrote the respondent lawyer, I believe, in this case. Did you need any accommodation to help you here? I'm fine. The mic okay? Yeah, I'm used to it. Okay. Thank you. Years of practice. Your Honor, I've heard a lot about manifest way this morning in our argument, in our prior arguments. This decision, in my view, is well supported by the evidence. Frankly, I think it's supported by overwhelming evidence. The commission decision, the written portion of it, is seven pages long. I have been defending employers before the commission my whole life. I've been living the dream. And I can tell you, I think the commission takes vocational rehabilitation very seriously. They don't deny it to a claimant lightly. They certainly listen to this man's evidence. If you read the decision, they analyze the evidence. They summarize the evidence. They interpret the evidence. They weigh the evidence. They come to this decision. Both you and your opponent cite National T as setting forth factors to be considered. And did the court in National T identify certain of those factors that were to be given primary emphasis? Or is the commission free to basically, in a fact-driven analysis, give whatever weight it wishes to on any of those factors? I think the commission is free to interpret the various factors and weigh the evidence and judge what's important in a given scenario. And they certainly did that in this case, noting his age, noting his background, noting his education. They only considered the appropriate factors that they were to consider under National T. They didn't pick something that was inappropriate. And they didn't engage in an improper analysis. Ultimately, it's a fact-driven decision, and it's not against the manifest weight. Yeah, I mean, I think it's absolutely a manifest weight question where they identified the important factors and weighed them and judged them and noted them in their decision. And they noted his potential employability. They noted his background, his education, his age, the costs, the relative costs that are involved, and absolutely said, you know, we know what you want. We understand what you want. It's just not something we can award under this circumstance. It's not reasonable. This was someone that had made up their mind what they wanted even before the permanent restrictions were imposed, and he decided he was going to go for it. And the commission, they really harshen their decision. They almost note that and say, you know, that's wonderful that you're motivated for something. It's just not a reasonable vocational rehabilitation plan based on the evidence. And that's what happened here, and it was the appropriate result. I would encourage you to affirm this decision. Thank you. Thank you, counsel. Your Honors, the nursing position is listed as a medium physical demand level position. The FCE found that the petitioner, the plaintiff in this case, was capable of doing medium physical demand level work. It also noted that the job that he was doing before, where he was earning $100,000, was a very heavy physical demand labor job, and he could not go back to it. So he could go to a nursing program within the medium physical demand. He's not looking to be a certified nurse's assistant. He's not looking to be a low-end nursing position where they may lift patients, where they may do heavier duty labor. And I think that that's probably where some of those statistics are coming for nurses that are having back injuries, for those nurses that are on a level where they deal hand-in-hand with the patients day in and day out. My client went into a surgical assistant position, nursing position. And, you know, I want to also say that I think one of the reasons why the commission just said, you know, it wasn't appropriate, he was entitled to vocational rehabilitation, but to what extent? And I think what they said, and I really believe that what they were saying, was that the cost of going through a four-year nursing program and the cost of paying this man over the years to go through that program wasn't reasonable. But what I wanted to make sure that I, the point that I wanted to make was that the wage differential would be like $900 a week, and the difference between that and what they would pay him for maintenance would be like $300, $300 a week. And the nursing program, this isn't a four-year MBA degree that we're looking at here, it's a nursing program. And the cost of it is going to be, is around $20,000, I believe is what it came out to. So, I mean, I think that it was a reasonable vocational program that he underwent. I think he got himself back to where he was pre-injury, and I think that's why he did what he did, and why he pursued it. And I agree with the arbitrator who initially heard the case. This man really sacrificed for himself and for his family. He's lost $100,000 per year while he was doing this. So are you saying he has completed the nursing program? Yes, he's going to be completing it very soon, and he's going to be employed. Okay, thank you, counsel. Thank you, judges. I appreciate your time. We appreciate your arguments both in this matter. It will be taken under advisement. A written disposition will be issued.